F I L E D

FEB 0 5 2018

TIMOTHY M. O'BRIEN CLERK
By_____Deputy

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ERIC M. MUATHE, | ) | |
| PLAINTIFF, | ) | CASE NO. 2: 18 - cv - 2064 - CM - JPO |
| VS. | ) | |
| WELLS FARGO BANK N.A., | ) | DESIGNATED PLACE OF TRIAL: |
| MATT R. HUBBARD, | ) | KANSAS CITY, KANSAS |
| JEHAN K. MOORE, | ) | **JURY TRIAL DEMANDED** |
| DEFENDANTS. | ) | |

## COMPLAINT

**COMES NOW**, prose Plaintiff, Eric Muathe, in this Complaint against Wells Fargo Bank N.A. ("Wells Fargo"), Matt R. Hubbard ("Hubbard"), and Jehan K. Moore ("Moore") and states as follows:

### PARTIES, JURISDICTION AND VENUE

1.    Plaintiff Eric M. Muathe is a natural person residing in Crawford County, Kansas and at all times material to this complaint was resident of this district.

2.    Defendant Wells Fargo is an incorporated business under the laws of the State of Delaware that maintains its headquarters at 420 Montgomery Street, San Francisco, California, 94104.

3.      Wells Fargo does business in the state of Kansas and is licensed to do business in the state of Kansas as a foreign corporation. Wells Fargo is a debt collector as defined by 15 U.S. Code § 1692a of the Federal Fair Debt Collection Practices Act.

4.      The Defendant attorney Hubbard is a debt collector as defined by 15 U.S. Code § 1692a of the federal Fair Debt Collection Practices Act and is believed to be a resident of this district.

5.      The Defendant attorney Moore is a debt collector as defined by 15 U.S. Code § 1692a of the federal Fair Debt Collection Practices Act and is believed to be a resident of this district.

6.      This Court is a proper forum for these claims brought pursuant to the Federal laws and Federal questions raised, and venue is proper because Defendants solicited business in Crawford County, Kansas. Plaintiff is a resident of Crawford County, Kansas, and a substantial part of the events, or omissions, giving rise to Plaintiff's claims occurred in this judicial district.

## THE REAL ESTATE SETTLEMENT PROCEDURES ACT
## AND REGULATION X

7.      The Real Estate Settlement Procedures Act ("RESPA") -12 U.S.C. §§ 2601, et seq.—permits a borrower (or an agent of a borrower) to submit a "qualified written request" for information relative to a "federally related mortgage loan" to any servicer of such a loan.' 12 U.S.C. § 2605(e)(1). Hereinafter, these qualified written requests and/or notice of errors, and/ or complaints, and/or letters, and/or notices, and/or communications shall be referred to as Requests for Information, or "RFIs."

8.      The federal Court of Appeals for the Ninth Circuit recently opined on what constitutes a "qualified written request" under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. Section 2605(e), in *Medrano et al. v. Flagstar Bank*, FSB et al., 2012 U.S. App. LEXIS 25274 (9th Cir. Dec. 11, 2012) first noted that it never had a previous occasion to interpret Section 2605(e). It then pointed out, however, that the Court of Appeals for the Seventh Circuit, in *Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676 (7th Cir. 2011), had previously considered the scope of Section 2605(e), which held that Section 2605(e) should be read broadly and that any "reasonably stated written request for account information can be a qualified written request." The Ninth Circuit followed the Seventh Circuit's broad reading of Section 2605(e), holding that RESPA does not require any "'magic' words" for a correspondence to be considered a QWR.

9.      RESPA provides that "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request... the servicer shall...provide the borrower with a written explanation or clarification that includes" the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605(0(2); 12 U.S.C. § 2605(0(2)(C); 12 U.S.C. § 2605(e)(2)(C)(i)-(ii).

10.      In January 2013, the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the authority granted by the Dodd-Frank Wall Street Reform and Consumer Protection Act— Public Law No. 111-203, 124 Stat. 1376 (2010)—which amended RESPA.

11.     The CFPB's RESPA Mortgage Servicing Final Rules—known as "Regulation X" and codified as 12 CFR § 102—were issued on January 17, 2013, and became effective on January 10, 2014.

12.     Through Regulation X, the CFPB has provided guidance for the interpretation of the foregoing RESPA provisions.

13.     Specifically, relative to RFIs, Regulation X provides that "a servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 CFR § 1024.36(a).

14.     12 CFR § 1024.36(d)(1) provides that a servicer must respond to a RFI by either "[p]roviding the borrower with the requested information and contact information, including a telephone number, for further assistance in writing" or "conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance."

15.     Notwithstanding the above, Regulation X provides for certain exceptions to servicers' obligations to respond to RFIs. Specifically, 12 CFR § 1024.36(f)(1) provides that a servicer does not have to comply with 12 CFR § 1024.36(d) if the request seeks substantially the same information as a prior request, the information sought is confidential, proprietary, or privileged, the information is not directly related to the

borrower's specific mortgage loan account, or the request is overbroad or unduly burdensome.

16.     If a servicer determines that it is exempted from responding to an RFI, pursuant to 12 CFR § 1024.36(f)(1), Regulation X requires the servicer to "notify the borrower of its determination in writing not later than five days (excluding legal public holidays, Saturdays, and Sundays) after making such determination," setting forth the specific "basis under paragraph (f)(1) of this section upon which the servicer has made such determination." 12 CFR § 1024.36(f)(2).

17.     Under the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. No. 111-203, H.R. 4173, the Act) home owners can request a timely loss mitigation package (and/or settlement options / considerations) pursuant to the new requirements of the above mentioned Dodd-Frank Act - specifically Dodd-Frank Act § 1024, and more specifically 12 CFR 1024.41.

18.     12 CFR § 1024.38 - General servicing policies, procedures, and requirements (a)Reasonable policies and procedures. A servicer shall maintain policies and procedures that are reasonably designed to achieve the objectives set forth in paragraph (b) of this section.

(b)Objectives -

(1)Accessing and providing timely and accurate information. The policies and procedures required by paragraph (a) of this section shall be reasonably designed to ensure that the servicer can:

(i) Provide accurate and timely disclosures to a borrower as required by this subpart or other applicable law;

(ii) Investigate, respond to, and, as appropriate, make corrections in response to complaints asserted by a borrower;

(iii) Provide a borrower with accurate and timely information and documents in response to the borrower's requests for information with respect to the borrower's mortgage loan;

(iv) Provide owners or assignees of mortgage loans with accurate and current information and documents about all mortgage loans they own;

(v) Submit documents or filings required for a foreclosure process, including documents or filings required by a court of competent jurisdiction, that reflect accurate and current information and that comply with applicable law; and

(vi) Upon notification of the death of a borrower, promptly identify and facilitate communication with the successor in interest of the deceased borrower with respect to the property secured by the deceased borrower's mortgage loan.

(2)Properly evaluating loss mitigation applications. The policies and procedures required by paragraph (a) of this section shall be reasonably designed to ensure that the servicer can:

(i) Provide accurate information regarding loss mitigation options available to a borrower from the owner or assignee of the borrower's mortgage loan;

(ii) Identify with specificity all loss mitigation options for which borrowers may be eligible pursuant to any requirements established by an owner or assignee of the borrower's mortgage loan;

(iii) Provide prompt access to all documents and information submitted by a borrower in connection with a loss mitigation option to servicer personnel that are assigned to assist the borrower pursuant to § 1024.40;

(iv) Identify documents and information that a borrower is required to submit to complete a loss mitigation application and facilitate compliance with the notice required pursuant to § 1024.41(b)(2)(i)(B); and

(v) Properly evaluate a borrower who submits an application for a loss mitigation option for all loss mitigation options for which the borrower may be eligible pursuant to any requirements established by the owner or assignee of the borrower's mortgage loan and, where applicable, in accordance with the requirements of § 1024.41.

(vi) Promptly identify and obtain documents or information not in the borrower's control that the servicer requires to determine which loss mitigation options, if any, to offer the borrower in accordance with the requirements of § 1024.41(c)(4).

19.     12 CFR § 1024.41 Loss mitigation procedures states "(a)Enforcement and limitations. A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA ( 12 U.S.C. 2605(f))."

## STATEMENT OF FACTS

20.     The above paragraphs are incorporated by reference.

21.     Wells Fargo is a mortgage "servicer" as that term is defined by 12 CFR § 1024.2(b) and 12 U.S.C. § 2605(i)(2). Wells Fargo indicates that it is the current servicer of Plaintiff's note, and mortgage on real property that secure the note (referred to hereinafter as the "loan").

22.     Plaintiff's loan is a "federally related mortgage loan" as said term is defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 CFR § 1024.2(b).

23.     As such, Wells Fargo is subject to the requirements of RESPA and Regulation X, and does not qualify for the exception for "small servicers"—as defined by 12 CFR § 1026.41(e)(4)—nor for the exemption for a "qualified lender"— as defined by 12 CFR § 617.700.

24.     The subject matter real property remains Plaintiff's primary residence since March 2007.

25.     Plaintiff submitted RFI(s), to Wells Fargo, which were "qualified written requests," as that term is defined by 12 U.S.C. § 2605(e)(1)(B). For example *see* attached Exhibit #1 which are notice of errors, and/ or complaints against all defendants dated January 8th, 2018.

26.     Although 12 CFR § 1024.36(f)(1) sets forth certain exceptions to Wells Fargo's requirement to respond to Plaintiff's RFIs, **there is no "active litigation" exception to Wells Fargo's obligation to respond to RFIs** under RESPA and Regulation X. *See* attached Exhibit #2 which are Defendant Wells Fargo's January 17th, 2018 three (3) acknowledgements of Plaintiff's RFI(s). *See* attached Exhibit #3 which are Defendant Wells Fargo's January 29th, 2018 responses to Plaintiff's RFI(s) wherein Defendant Wells Fargo states: "... [It] is unable to respond because your complaint involves the same issues raised in pending or prior litigation." The issues raised by Plaintiff as seen in Exhibit #1 had not been raised in any pending, or prior, litigation since they arose solely from the loan mitigation process. Also *see* attached Exhibit #5 which is Wells Fargo's July 31, 2017 response wherein the Defendant Wells Fargo states: "... we received an inquiry on July 14th, 2017; however the account is in active litigation. ... We won't be providing a response to

your inquiry because the issues raised are the same or very closely related to the issues raised in the pending litigation."

27.     It is important to note that in a July 27th, 2017 hearing the Judge in Crawford County, Kansas foreclose case #2014 CV 86P (styled Wilmington Trust N.A. versus Eric Muathe) that Wells Fargo is referring to had effectively put an indefinite stay in the proceedings so that Plaintiff would pursue the loss mitigation option.

28.     As such, Wells Fargo failed to provide adequate responses to Plaintiff's RFIs. Specifically, Wells Fargo has not provided any of the requested materials concerning specific information related to the Plaintiff's loan, as required by 12 CFR § 1024.36 and 12 U.S.C. § 2605(e)(2)(C)(i).

29.     Accordingly, Plaintiff sent Notices of Error ("NOEs") - submitted pursuant to 12 U.S.C. § 2605(e)(1) and 12 CFR §1024.35(b)(ll) - to Wells Fargo concerning Wells Fargo's insufficient responses to Plaintiff's RFIs.

30.     Had Wells Fargo adequately responded to Plaintiff's RFIs, Plaintiff would not have needed to send NOEs regarding Wells Fargo's erroneous assertion of an "active litigation" exception to its obligations under RESPA and Regulation X. As such, Plaintiff was harmed by Wells Fargo's failure to adequately respond to his RFIs because it required him to incur the expenses associated with sending NOEs, such as his time, postage, etc.

31.     As a majority of home owners sending RFIs are involved in defending against foreclosure, accepting this kind of conduct would allow creditors to hide behind the foreclosure process to unlawfully extinguish their RESPA and Regulation X obligations.

32.     12 § 1024.40 Continuity of contact  § a In general. A servicer shall maintain policies and procedures that are reasonably designed to achieve the following objectives:

1. Assign personnel to a delinquent borrower by the time the servicer provides the borrower with the written notice required by § 1024.39(b), but in any event, not later than the 45th day of the borrower's delinquency.

2. Make available to a delinquent borrower, via telephone, personnel assigned to the borrower as described in paragraph (a)(1) of this section to respond to the borrower's inquiries, and as applicable, assist the borrower with available loss mitigation options until the borrower has made, without incurring a late charge, two consecutive mortgage payments in accordance with the terms of a permanent loss mitigation agreement. If a borrower contacts the personnel assigned to the borrower as described in paragraph (a)(1) of this section and does not immediately receive a live response from such personnel, ensure that the servicer can provide a live response in a timely manner.

33.    Under 1024.41 (d) Debtors are allowed to appeal decisions.  A servicer is required to include the specific reasons for any denial.  A general denial is not a proper denial **and the options for appeal must be in the denial**.  The debtor has 90 days to appeal. Incomplete applications are not a basis for denial see 41 (c) (2) (iv) unless the borrower fails to respond to requests for additional information. *See* Exhibit #8 where Defendant Wells Fargo states "because you have not provided the required documentation, we are unable to offer you assistance options". It is important to note that Plaintiff responded to all requests for additional information but there was a communication breakdown, and confusion, as all communication with Defendant Wells Fargo had to go through Defendant Moore. **Exhibit #8 demonstrates that Wells Fargo clearly failed to comply with 12 C.F.R. 1024.41 (d) since no options for appeal were in the denial.**

34.    12 C.F.R. § 1024.41 Loss mitigation procedures - Incomplete loss mitigation application evaluation - (c)(2)(i) states: "[I]n general. Except as set forth in paragraphs (c)(2)(ii) and (iii) of this section, a servicer shall not evade the requirement to evaluate a complete loss mitigation application for all loss mitigation options available to the borrower by offering a loss mitigation option based upon an evaluation of any information provided by a borrower in connection with an incomplete loss mitigation application."

35.    12 C.F.R. § 1024.41 Loss mitigation procedures - Incomplete loss mitigation application evaluation - (c)(2)(ii) states: "Reasonable time. Notwithstanding paragraph (c)(2)(i) of this section, if a servicer has exercised reasonable diligence in obtaining documents and information to complete a loss mitigation application, but a loss mitigation application remains incomplete for a significant period of time under the circumstances without further progress by a borrower to make the loss mitigation application complete, a servicer may, in its discretion, evaluate an incomplete loss mitigation application and offer a borrower a loss mitigation option. Any such evaluation and offer is not subject to the requirements of this section and shall not constitute an evaluation of a single complete loss mitigation application for purposes of paragraph (i) of this section."

36.    12 C.F.R. § 1024.41 Loss mitigation procedures - Incomplete loss mitigation application evaluation - (c)(2)(iii) states: "Short-term loss mitigation options. Notwithstanding paragraph (c)(2)(i) of this section, a servicer may offer a short-term payment forbearance program or a short-term repayment plan to a borrower based upon an evaluation of an incomplete loss mitigation application."

37.    It is thus demonstrated here that no significant period of time had passed since Plaintiff last communicated to Defendant Wells Fargo - through Defendant Moore -

around December 27th, 2017, where Plaintiff sent an email to Defendant Moore stating: "It seems to me that Wells Fargo did not take a look at page two (2) of the pdf document I had emailed you to forward to Wells Fargo since the information Wells Fargo is requesting was addressed on that page (page two). Thanks." See Exhibit #1, page 10.

38.     Additionally pursuant to 12 C.F.R. § 1024.41 (c)(2)(ii) "further progress by a borrower to make the loss mitigation application complete" given the issues that arose, and in furtherance of wanting to move along the loss mitigation application process can be evidenced when Plaintiff promptly filed formal complaints against all defendants with the Consumer Financial Protection Bureau (CFPB) on January 8th, 2018 which was acknowledged by Defendant Wells Fargo on January 17th, 2018. *See* attached Exhibit #2. The loss mitigation was denied around January 20th, 2018 (see Exhibit #8). Clearly no significant period of time has, or had, passed. And clearly Defendant Wells Fargo opted not to evaluate what it deemed to be an incomplete loss mitigation application as required by 12 C.F.R. § 1024.41 (c)(2)(ii).

39.     As seen on the attached Exhibits going back to October 17th, 2016 (*See* Exhibit #1, page #15), October 18th, 2016 (See Exhibit #1, page #15), November 28th, 2016 (*See* Exhibit #1, page #18), February 2nd, 2017 (*See* Exhibit #6, page #3),  and again on March 3rd, 2017 (*See* Exhibit #6, page #4),  Plaintiff was repeatedly denied immediate loss mitigation options when Plaintiff requested them through Defendant Hubbard, and more importantly Plaintiff was denied direct access to Wells Fargo - the alleged servicer of the loan in question - in violation of 12 CFR § 1024.38, 12 C.F.R. § 1024.41 and 12 C.F.R. § 1024.40 "Continuity of contact" respectively. *See* attached Exhibit #4.
letter/notice/complaint from Plaintiff dated as regard's Defendants Wells Fargo and

Defendant Hubbard's failure to follow Dodd-Frank Act - specifically Dodd-Frank Act § 1024, and more specifically 12 CFR § 1024.38 and 12 CFR 1024.41.

40.    As seen in Exhibit #6, page #4, in an email communication from Plaintiff to Defendant Hubbard dated March 3rd, 2017 Plaintiff stated: "As far back as Mon, Oct 17, 2016 at 12:46 PM (when I emailed you for settlement purposes only) I requested direct access to someone on Plaintiff's end who would discuss settlement/loss mitigation options but you have kept stating repeatedly that you will get back to me - as the record will show - and you never have."

41.    As seen in Exhibit #6, page #4, in an email communication to Plaintiff Defendant Hubbard stated on March 3rd, 2017 that: "We communicated your offer of settlement to the Bank and the Bank declined your offer of settlement and is moving forward with this case". This was done without any loss mitigation package being submitted or even the loss mitigation options, or process, being offered to Plaintiff even after repeated attempts to pursue foreclose alternative options. *See* attached Exhibit #6. This did not follow the procedures laid out in 12 CFR § 1024.38 (b)(2)(v) in accordance with the requirements of 12 CFR § 1024.41.

42.    It is unknown to Plaintiff whether, or not Defendant Hubbard actually contacted Defendant Wells Fargo, and/or Wilmington Trust about loss mitigation settlement options, or alternative paths to foreclose when Plaintiff requested this. What is known is that no loss mitigation package was sent to Plaintiff at that time.

43.    The Fair Debt Collection Practices Act (FDCPA) U.S.C. §1692e(11) states: The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication,

that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, **except that this paragraph shall not apply to a formal pleading made in connection with a legal action.**

44.     **Loss mitigation is not part of a formal pleading made in connection with a legal action.**

45.     Defendant Wells Fargo has indicated to Plaintiff as required by disclosure obligations contained in FDCPA U.S.C. §1692e(11) that: "This is an attempt to collect a debt and any information obtained will be used for that purpose." Defendants Hubbard and Moore have never disclosed to Plaintiff that they are debt collectors as required by the FDCPA U.S.C. §1692e(11) which amounts to "false or misleading representations". Essentially Defendants Hubbard and Moore have never even disclosed to Plaintiff that any information obtained from Plaintiff can and will be used for the purpose of collecting the debt.

46.     Plaintiff is concerned that debt collector Defendants Moore and Hubbard could use, or could have used, against him information meant for loss mitigation purposes only since they insisted on being the only conduit between Plaintiff and Defendant Wells Fargo (despite his on the record objections and protestations); not to mention raising privacy issues.

47.     Going as far back as October 17th, 2016 ALL defendants have denied Plaintiff direct access to a Wells Fargo contact person, or team, in violation of 12 C.F.R. § 1024.41 and 12 C.F.R. § 1024.40 "Continuity of contact". *See* Exhibit #1.

48.     In early August 2017, in response to a letter attached as Exhibit #5, Plaintiff called Defendant Wells Fargo at 1-800-853-8516 extension 2109715584, and spoke with Executive Resolution Specialist - Customer Care and Recovery Group - Rosie Gregory  who indicated to Plaintiff that she could not assist him in any way (or, answer any questions) since the account was in "active litigation" even though the communication dated July 31, 2017 indicated on top of page two that "if you have any questions, I'm here to help".

49.     The pressing issue being that since there was a clear substantial delay in beginning the loss mitigation process the late fees keep piling up, and that the Defendants Hubbard and Moore were/are violating Plaintiff's privacy by insisting that all of Plaintiff's personal documents for loss mitigation be sent through them. Plaintiff repeatedly objected to this practice, as the attached exhibits will show.  Additionally, this private information might be used against Plaintiff, or might give Defendant debt collector attorneys an unfair tactical advantage in litigation.

50.     As indicated by 12 C.F.R. § 1024.40 Defendants Hubbard and Moore are not servicers,  and neither are they servicer personnel,  and they don't have any federal authority to handle, or make decisions, as regards any of Plaintiff's personal/private loss mitigation homeowner assistance information, or application.

51.     Defendant Moore sent an email to Plaintiff on December 19th, 2017 wherein she stated: "The following items are still needed in connection with your request for mortgage assistance. If **we** do not receive these items by December 26, 2017, **we** will not be able to continue with your request for a loan modification. Please **email me** the following items as soon as possible and please **let me** know if you have any questions"(Emphasis added). *See* Exhibit #1 page 9.  Even after plaintiff's objection and confusion about this

Defendant Moore sent yet another email to Plaintiff on January 3rd, 2018 wherein she stated: "Please let **me** know if you intend to provide the missing documentation listed below. **I** need this documentation as soon as possible or Wells Fargo will not be able to proceed with your request for mortgage assistance(Emphasis added)." *See* Exhibit #1, page 10.

52.     Plaintiff took it that Defendant Moore personally sent the email and that she is (was) personally involved in reviewing Plaintiff's private/personal information and loss mitigation application - against Plaintiffs objections. There is no iota of indication that Defendant Moore sent this email on behalf of another party. Defendant Moore has/had no authority, right, or privilege to interfere with direct  communication with the servicer. Defendant Moore also has no right to make demands as if she were the servicer, or servicer personnel. This is improper and misleading and as a debt collector Plaintiff believes and alleges that Defendant Moore is making false misrepresentations in violation of 15 U.S. Code § 1692e.

53.     "A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. [§] 2605(f)."); 12 U.S.C. § 2605(f) (creating a private right of action for a borrower to sue **"[w]hoever fails to comply with any provision of this section"**). As such Plaintiff has a right to sue all Defendants as per section 6(f) of RESPA (12 U.S.C. [§] 2605(f)."

54.     Plaintiff is asserting claims for relief against Wells Fargo for breach of the duties owed to him, pursuant to 12 U.S.C. § 2605(e), 12 C.F.R. § 1024.35, and 12 CFR § 1024.36.

55.    Plaintiff has a private right of action, pursuant to 12 U.S.C. § 2605(f), for the claimed breaches, and RESPA provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## COUNT ONE

## VIOLATIONS OF 12 U.S.C. § 2605,

## 12 C.F.R. § 1024.35, AND 12 C.F.R. § 1024.36,

56.    Plaintiff repeats and re-alleges the above paragraphs with the same force and effect as though fully set forth herein.

**57.    This count is directed to Defendant Wells Fargo.**

58.    Plaintiff submitted RFIs, to Wells Fargo, which were "qualified written requests," as that term is defined by 12 U.S.C. § 2605(e)(1)(B).

59.    Plaintiff's RFIs requested specific information related to the loan, pursuant to 12 C.F.R. § 1024.35, and 12 CFR § 1024.36.

60.    Wells Fargo failed to provide adequate responses to Plaintiff's RFIs. Specifically, Wells Fargo has not provided any of the requested materials concerning specific information related to the Plaintiff's loan, as required by 12 CFR § 1024.35, 12 CFR § 1024.36 and 12 U.S.C. § 2605(e)(2)(C)(i), but instead replied with four (4) separate form letters claiming an "active litigation" exception to its obligations.

61.    12 CFR § 1024.35 and 12 CFR § 1024.36(f) did, and does, not permit Wells Fargo to assert an "active litigation" exception to responding to the requests contained in Plaintiff's RFIs.

62.     Wells Fargo's actions, in failing to fully respond to Plaintiff's RFIs in compliance with 12 U.S.C. § 2605(e)(2)(C)(i), 12 CFR § 1024.35, and 12 CFR § 1024.36(d) or, alternatively, to state the reason under 12 U.S.C. § 2605(e)(2)(C)(i), 12 CFR § 1024.35, and 12 CFR §1024.36(f)(1), pursuant to which Wells Fargo determined it did not need to comply with 12 U.S.C. § 2605(e)(2)(C)(i), 12 CFR § 1024.35,  and 12 CFR § 1024.36(d), constitute clear violations of the requirements of 12 U.S.C. § 2605(e)(2)(C)(i), as interpreted by 12 CFR § 1024.35, and 12 CFR § 1024.36.

63.     As a result of Wells Fargo's assertion of an erroneous "active litigation" exception to its obligations under RESPA and Regulation X, Plaintiff was required to send additional "qualified written requests," as that term is defined by 12 U.S.C. § 2605(e)(1)(B), in the form of NOEs, and/ or complaints, and/or letters, and/or notices, and/or communications.

64.     Had Wells Fargo adequately responded to Plaintiff's RFIs, would not have needed to send NOEs, and/ or complaints, and/or letters, and/or notices, and/or communications regarding Wells Fargo's erroneous assertion of an "active litigation" exception to its obligations under RESPA and Regulation X.

65.     Plaintiff was harmed by Wells Fargo's failure to adequately respond to his RFIs because it required Plaintiff to incur the time, late fees, and expenses associated with sending NOEs, and/ or complaints, and/or letters, and/or notices, and/or communications.

66.     Wells Fargo is hiding behind a baseless "active litigation" exception in order to ignore its legal obligations to respond to Plaintiff's RFIs.

67.     Wells Fargo's actions are believed to be the continuation of a pattern and practice of behavior in conscious disregard of the Plaintiff's, and other borrowers, rights.

68.     It is self evident that even with a currently pending 2016 class action lawsuit styled *Lieber v. Wells Fargo Bank*, N.A., Case No. 1:16-cv-02868-PAG (N.D. Ohio), against Wells Fargo on the identical "active litigation" issue (where it has reached a $425,000 settlement) Wells Fargo continues to use "active litigation" as an excuse and basis for not responding to borrowers' RFIs meaning the class action lawsuit and subsequent settlement will not deter Wells Fargo from continuing to abuse and violate borrowers' RESPA rights. *See* attached Exhibit #7. **Note: Plaintiff is opting out of the above class action lawsuit.**

69.     As a result of Wells Fargo's actions, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs, and attorney fees 12 U.S.C. § 2605(f)(2)-(3).

## COUNT TWO

### VIOLATIONS OF 12 C.F.R. § 1024.41(c)

70.     Plaintiff repeats and re-alleges the above paragraphs with the same force and effect as though fully set forth herein.

**71.     This count is directed to Defendant Wells Fargo.**

72.     As shown in this complaint it is indisputable that Defendant Wells Fargo failed to follow the procedures clearly laid out in 12 C.F.R. § 1024.41(c). Clearly no significant period of time has passed and Plaintiff never failed to respond to requests for additional information. Additionally, Defendant Wells Fargo opted not to evaluate what it deemed to be an incomplete loss mitigation application as required by 12 C.F.R. § 1024.41 (c)(2).

73.     "A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. [§] 2605(f)."); 12 U.S.C. § 2605(f) (creating a private right of action for a borrower to sue **"[w]hoever fails to comply with any provision of this section"**). As such Plaintiff has a right to sue all Defendants as per section 6(f) of RESPA (12 U.S.C. [§] 2605(f)."

74.     As a result of Wells Fargo's actions, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs, and attorney fees 12 U.S.C. § 2605(f)(2)-(3).

## COUNT THREE

## VIOLATIONS OF 12 C.F.R. § 1024.41 (d)

75.     Plaintiff repeats and re-alleges the above paragraphs with the same force and effect as though fully set forth herein.

**76.     This count is directed to Defendant Wells Fargo.**

77.     Exhibit #8 demonstrates that Wells Fargo clearly failed to comply with 12 C.F.R. 1024.41 (d) since no options for appeal were in the denial.

78.     "A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. [§] 2605(f)."); 12 U.S.C. § 2605(f) (creating a private right of action for a borrower to sue **"[w]hoever fails to comply with any provision of this section"**). As such Plaintiff has a right to sue all Defendants as per section 6(f) of RESPA (12 U.S.C. [§] 2605(f)."

79.     As a result of Wells Fargo's actions, Wells Fargo is liable to Plaintiff for actual damages, statutory damages, costs, and attorney fees 12 U.S.C. § 2605(f)(2)-(3).

## COUNT FOUR

### VIOLATIONS OF 12 C.F.R. § 1024.40, AND 12 C.F.R. § 1024.41

80.     Plaintiff repeats and re-alleges the above paragraphs with the same force and effect as though fully set forth herein.

**81.     This count is directed to ALL Defendants.**

82.     Continuity of Contact – Reg. X, 12 CFR § 1024.40 states that the Servicer to have policies and procedures to assign person or team to borrower, available by phone, no later than the 45th day of delinquency. In this case even after repeated objections, complaints and protestations spanning more than 16 months ALL defendants have denied Plaintiff direct access to a specific person, or team, at Wells Fargo.

83.     "A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. [§] 2605(f)."); 12 U.S.C. § 2605(f) (creating a private right of action for a borrower to sue **"[w]hoever fails to comply with any provision of this section"**). As such Plaintiff has a right to sue all Defendants as per section 6(f) of RESPA (12 U.S.C. [§] 2605(f)."

84.     As a result of ALL Defendants' actions, Defendants are individually, and separately, liable to Plaintiff for actual damages, statutory damages, costs, and attorney fees 12 U.S.C. § 2605(f)(2)-(3).

## COUNT FIVE

### VIOLATIONS OF 15 U.S.C. § 1692 ET SEQ. (FDCPA)

85.     Plaintiff repeats and re-alleges the above paragraphs with the same force and effect as though fully set forth herein.

**86.     This count is directed to ALL Defendants.**

87.     15 U.S. Code § 1692e - False or misleading representations - states: "[A] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

88.     As already established in this Complaint Defendant Moore used a "deceptive, or misleading representation or means in connection with the collection of [the] debt" in violation of 15 U.S. Code § 1692e when she sent Plaintiff a communication where it facially implied that she was acting as the entity reviewing Plaintiff's loss mitigation application. *See* Exhibit #1, page 9 and Exhibit #1, page 10.

89.     As already established in this Complaint Defendant Hubbard used a "deceptive, or misleading representation or means in connection with the collection of [the] debt" in violation of 15 U.S. Code § 1692e when he stated on several occasions that he had contacted the Plaintiff, and/or servicer Defendant Wells Fargo about foreclosure alternatives yet no loss mitigation packages, or foreclosure alternatives, was ever sent, or offered, to Plaintiff as required by federal law. For example *see* Exhibit #6, page #4. Plaintiff alleges and believes that Defendant did not actively pursue any good faith attempt(s) to furnish Plaintiff with settlement options, and/or foreclosure alternatives. Early loss mitigation helps stop the accumulation of late fees and penalties which Defendant Hubbard does/did not seem to care about.

90.     As already established in this Complaint, and more so in Count One and Two that  Defendant Wells Fargo used "deceptive, or misleading representation[s] or means in connection with the collection" of the subject matter debt , in violation of 15 U.S. Code § 1692e, when it knowingly chose to use "active litigation" as an lawful reason not to

respond to Plaintiff's RFIs and also when it knowingly, and against federal law, refused to give Plaintiff direct access to its loss mitigation personnel.

91.     As shown above, and in violation of U.S.C. §1692e(11), Defendants Hubbard and Moore have never indicated to Plaintiff that they are debt collectors, and/or advised Plaintiff that any, and all, information provided by Plaintiff could and would be used against Plaintiff - even as they insisted that they be the only conduit to Defendant servicer Wells Fargo as they handled private information and communications during the loss mitigation process which is separate and not part of formal legal proceedings.

92.     As a result of ALL Defendants' actions, Defendants are individually, and separately, liable to Plaintiff for each separate and distinct FDCPA violation with actual damages, statutory damages, costs, and attorney fees.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial to the jury of all disputed issues in this cause.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Eric Muathe,  prays for an Order as follows:

A.     Entering judgment in favor of Plaintiff;

B.     Awarding Plaintiff actual damages, statutory damages as allowed under applicable law and punitive damages;

C.     Awarding Plaintiff attorneys' fees and costs, including interest thereon, as allowed or required by law; and

Granting all such further and other relief as this Court deems just and appropriate.

Respectfully submitted,

Eric Muathe

Eric Muathe
1410 Bitner Terrace
Pittsburg, Kansas, 66762
(913) 980-7286
muathedotcom@gmail.com