# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ERIC M. MUATHE,

  Plaintiff,

v.

WELLS FARGO BANK, N.A., et. al.,

  Defendants.

Case No. 18-2064-CM-TJJ

## MEMORANDUM AND ORDER

  This matter is before the court on defendants Wells Fargo Bank, NA, Matt R. Hubbard, Jehan K. Moore, Michael L. Abrams, and Lathrop Gage, LLP's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 11). Plaintiff filed this action against defendants claiming multiple violations of the Real Estate Settlement Procedures Act ("RESPA") and the Fair Debt Collection Practices Act ("FDCPA") in connection with his application for a loan modification. Defendants now move to dismiss the amended complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the court grants the motion and dismisses the amended complaint.

  **I. Background**

  Plaintiff is a defendant in a pending foreclosure action in the District Court of Crawford County, Kansas. On August 11, 2014, Wilmington Trust, N.A., as the current holder of plaintiff's mortgage, filed the Petition for Foreclosure of Mortgage. The petition alleges plaintiff failed to pay amounts due.

  On July 11, 2016, plaintiff filed a Second Amended Answer and Counterclaim in the foreclosure action. Attorneys from defendant Lathrop Gage, LLP entered their appearance in the foreclosure action on behalf of Wilmington Trust. Defendants Jehan K. Moore and Michael L. Abrams, partners at Lathrop

-1-

Gage, currently represent Wilmington Trust in the foreclosure action against plaintiff. Defendant Matt R. Hubbard was formerly a partner with Lathrop Gage and formerly represented Wilmington Trust in the foreclosure action.

In exhibits attached to plaintiff's amended complaint, it appears that around October 2016, plaintiff began communicating with defendant Hubbard regarding settlement options in the foreclosure action. After Hubbard confirmed that Wilmington Trust authorized him to communicate with plaintiff regarding settlement offers, plaintiff sent Hubbard a settlement offer, and Hubbard agreed to confer with his client. In March 2017, Hubbard informed plaintiff that Wilmington Trust declined his offer of settlement. Litigation continued in the foreclosure action throughout 2017.

In September 2017, defendant Moore emailed plaintiff to inform him that she was taking over the matter from Hubbard. She forwarded two letters from defendant Wells Fargo regarding plaintiff's request for mortgage assistance and requested plaintiff send any documentation and correspondence regarding the case to her attention. Wells Fargo is the loan servicer for plaintiff's mortgage. As the loan servicer, Wells Fargo "performs services in connection with the mortgage loan on behalf of the owner of [plaintiff's] loan, including collecting loan payments, processing applications for loan modification, and commencing and managing foreclosure proceedings." (Doc. 12, at n.2.) Between September and December 2017, plaintiff and Moore communicated about documentation needed for plaintiff's requested loan modification. On December 19, 2017, Moore emailed plaintiff with the outstanding documentation needed for his request for mortgage assistance. She informed plaintiff that if the documents were not received by December 26, 2017, his request could not be completed. Plaintiff responded to Moore's email and inquired as to who was requesting the information. Plaintiff expressed his concerns that the requests were not coming directly from Wells Fargo, the loan servicer, and "objected" to Moore's involvement as a "conduit for communications with the servicer." Moore

responded that Wells Fargo was requesting the information, and that as Wells Fargo's attorney, she was acting on behalf of them to collect the documentation. Moore followed up with plaintiff on January 3, 2018 regarding the outstanding documentation, and on January 20, 2018, a Home Preservation Specialist with Wells Fargo sent plaintiff a letter informing him that they were unable to offer any mortgage assistance options because of the incomplete application.

After filing unsuccessful complaints with the Consumer Financial Protection Bureau and the Kansas Office of the Disciplinary Administrator, plaintiff filed this pro se action on February 9, 2018 alleging misconduct in connection with his application for a loan modification.

## II. Legal Standard

Defendants move to dismiss plaintiff's amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing plaintiff has failed to state any claims against them.

The court will grant a 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id*. "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal*, 453 F.3d at 1252.

Where, as here, the plaintiff proceeds pro se, the court construes the pro se filings liberally. *Hall v. Doering*, 997 F. Supp. 1445, 1451 (D. Kan. 1998) (citing *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)).

A court may not, however, supply "additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

### III. Analysis

As mentioned above, plaintiff's amended complaint consists of various claims for violations of RESPA and the FDCPA. RESPA is a "consumer protection statute enacted to regulate real estate settlement processes." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1144 (10th Cir. 2013). And the FDCPA is designed to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The court will address each of plaintiff's claims individually. Considering the amended complaint as a whole, plaintiff's claims generally relate to the handling of his loan modification requests and the Lathrop Gage attorneys' involvement in the matter.

In Count I, plaintiff claims violations of 12 U.S.C. § 2605, 12 C.F.R. § 1024.35, and 12 C.F.R. § 1024.36. RESPA imposes a duty on loan servicers to respond to borrower inquiries. 12 U.S.C. § 2605(e). If a loan servicer receives a "qualified written request" from the borrower for "information relating to the servicing of such loan," the servicer has five days to provide a written response acknowledging the correspondence and 30 days to take action with respect to the inquiry. 12 U.S.C. § 2605(e)(1).

In the amended complaint, plaintiff claims that he submitted qualified written requests to defendant Wells Fargo, his loan servicer. In these written requests, plaintiff alleges he sought specific information related to his loan pursuant to 12 C.F.R. § 1024.35 and 12 C.F.R. § 1024.36, and that Wells Fargo failed to provide adequate responses to these requests. Specifically, plaintiff notes that Wells

-4-

Fargo responded claiming it could not provide the information requested because plaintiff's case was in active litigation. Plaintiff argues the law does not allow for an "active litigation" exception in relation to qualified written requests.

In response to plaintiff's allegations, defendant Wells Fargo argues that under RESPA, a servicer is required to respond to requests by a borrower only to the extent the request seeks information relating to the servicing of the loan. Wells Fargo maintains that requests regarding loan modification processes are not covered under this provision of RESPA. In his response to the motion to dismiss, plaintiff admits that he submitted qualified written requests to Wells Fargo requesting information related to his loan, specifically seeking "information as to a direct contact at Wells Fargo who would communicate directly with Plaintiff as regards loan modification correspondence and inquiries as required by Reg. X, 12 CFR § 1024.40." (Doc. 15, at 19.)

"Servicing" of the loan is defined under RESPA as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Servicing of a loan therefore refers to "ordinary, scheduled payments a borrower makes per the pre-established terms of a loan agreement rather than payments related to loss mitigation or loan modification." *Christenson v. CitiMortgage, Inc.*, 255 F. Supp. 3d 1099, 1104 (D. Colo. 2017). Because plaintiff's requests for information concerned loss mitigation and loan modification, rather than ordinary payments, his requests were not in regard to the servicing of his loan and are therefore not covered by RESPA. The court grants defendants' motion to dismiss on Count I.

In Count II, plaintiff claims that defendant Wells Fargo failed to follow procedures found in 12 C.F.R. § 1024.41(c) of RESPA. 12 C.F.R. § 1204.41 governs loss mitigation procedures. Under

subsection (c), if a loan servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, the servicer must evaluate the borrower for loss mitigation options and provide the borrower of notice in writing of any loss mitigation options within 30 days of receiving the application. If, however, a servicer has exercised reasonable diligence in obtaining documents and information needed to complete a loss mitigation application and the application remains incomplete for a "significant period of time under the circumstances" without any progress by the borrower to complete the application, the servicer may, in its discretion, choose to evaluate the incomplete application. 12 C.F.R. § 1024.41(c)(2)(ii).

Plaintiff argues that Wells Fargo did not allow for a "significant period of time" for plaintiff to complete the loss mitigation application, and that it failed to evaluate his incomplete application as required by 12 C.F.R. § 1204.41(c)(2). But, as Wells Fargo correctly points out in response, it had no duty to evaluate plaintiff's incomplete loss mitigation application. Section 1204.41(c) requires a servicer to evaluate a *complete* loss application, and may, *in its discretion*, evaluate an incomplete application.

As for his significant period of time argument, plaintiff claims he was never given a final deadline to complete the application. He also argues that he was making progress on the application, evidenced by his filing of formal complaints against the defendants with the Consumer Financial Protection Bureau, and therefore Wells Fargo should not have denied his application.

According to documents attached to the amended complaint, Lathrop Gage attorneys—representing Wells Fargo—reached out to plaintiff on numerous occasions seeking specific documents and information from plaintiff in order to complete his loss mitigation application. Defendant Moore first reached out to plaintiff on September 29, 2017 with an email and by mailing him a letter requesting information. After following up on November 3, 2017, plaintiff began submitting documentation to Moore. On December 19, 2017, Moore emailed plaintiff and outlined the remaining documentation

needed to complete the loss mitigation application, giving him a deadline of December 26, 2017. On January 3, 2018, Moore again emailed plaintiff seeking the outstanding documentation and stated that if he did not provide the necessary information, Wells Fargo would be unable to proceed with his request for mortgage assistance. Plaintiff began submitting complaints about Wells Fargo to the Consumer Financial Protection Bureau. On January 20, 2018, Wells Fargo informed plaintiff that it was unable to provide him with loan assistance because his application had been pending for a considerable amount of time and all required documentation had not been submitted. Wells Fargo told plaintiff to contact them should he want to continue the loan review process.

Based on the facts in the amended complaint and evidence attached to the complaint, the court does not find that plaintiff has pleaded a plausible claim that Wells Fargo violated section 1204.41(c). Wells Fargo had no duty to evaluate plaintiff's incomplete application. And Wells Fargo—through defendant Moore—made repeated attempts over a three-month period to collect the necessary documentation from plaintiff to complete his application, gave him a deadline to submit that documentation, and even extended the deadline. And Wells Fargo never "denied" plaintiff's application—it simply informed plaintiff it could not offer him any mortgage assistance options because he had not submitted all the required documentation. Defendants' motion to dismiss Count II is granted.

In Count III, plaintiff claims Wells Fargo violated 12 C.F.R. § 1024.41(d) by failing to give him options for appeal in the denial of his loan modification application. Section 1024.41(d) does not discuss appeal options, but rather outlines what loan servicers must include in a written denial of a loan modification application. Section 1204.41(h)(1) states that "a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower." This provision only applies if a servicer receives a *complete* loss mitigation application 90 days before a foreclosure sale.

Here, plaintiff did not submit a complete loss mitigation application and there is no evidence that Wells Fargo denied any application he submitted. Wells Fargo, therefore, had no duty to provide plaintiff an appeal option. Plaintiff has failed to state a claim and defendants' motion to dismiss Count III is granted.

In Count IV, plaintiff claims all defendants are liable for violations of 12 C.F.R. § 1024.40, specifically the provision that requires a servicer to "[a]ssign personnel to a delinquent borrower" and to "[m]ake available to a delinquent borrower, via telephone, personnel assigned to the borrower . . . to respond to the borrower's inquiries, and as applicable, assist the borrower with available loss mitigation options . . . ." 12 C.F.R. § 1024.40(a)(1)–(2). Plaintiff essentially takes issue with the fact that he was forced to communicate with Lathrop Gage attorneys about the loss mitigation application rather than representatives from Wells Fargo.

According to regulations promulgated by the Consumer Financial Protection Bureau, there is no private cause of action to enforce the provisions of § 1204.40:

> Servicers are required to maintain reasonable policies and procedures with respect to providing delinquent borrowers with access to personnel to assist them with loss mitigation options where applicable. The policies and procedures must be reasonably designed to ensure that a servicer assigns personnel to a delinquent borrower by the time a servicer provides such borrower with the written notice required by the early intervention requirements, but in any event, by the 45th day of a borrower's delinquency. These personnel should be accessible to the borrower by phone to assist the borrower in pursuing loss mitigation options, including advising the borrower on the status of any loss mitigation application and applicable timelines. The personnel should be able to access all of the information provided by the borrower to the servicer and provide that information, when appropriate, to those responsible for evaluating the borrower for loss mitigation options. This section includes an exemption for small servicers as discussed below. The Bureau and the prudential regulators will be able to supervise servicers within their jurisdiction to assure compliance with these requirements *but there will not be a private right of action to enforce these provisions*.

*Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X)*, 78 Fed. Reg. 10696, 10698 (Feb. 14, 2013) (emphasis added). Because there is no private right of action to enforce the provision plaintiff has pleaded in his amended complaint, the court dismisses Count IV.

Finally, in Count V, plaintiff claims all defendants are liable for violations of the FDCPA, specifically for using "false, deceptive, or misleading representation or means in connection with the collection of any debt." Plaintiff alleges that the Lathrop Gage attorneys violated the FDCPA by contacting him on behalf of Wells Fargo regarding the loss mitigation process and foreclosure alternatives and by not identifying themselves as debt collectors. He claims that Wells Fargo violated the FDCPA by using the "active litigation" excuse to avoid responding to his requests for information.

The three "broad prohibitions" within the FDCPA include a prohibition on abusive, oppressive or harassing collection methods, a prohibition on the use of false, deceptive, or misleading collection methods, and a prohibition on using unfair or unconscionable means to collect any debt. *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002). To establish an FDCPA violation, a plaintiff must show (1) he is a "consumer" within the meaning of the FDCPA; (2) the debt at issue arises out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant is a "debt collector" within the meaning of the FDCPA; and (4) the defendant, through its acts or omissions, violated a provision of the FDCPA. *Yang v. Midland Credit Mgmt., Inc.*, No- 15-2686-JAR, 2016 WL 393726 at *1 (D. Kan. Feb. 2, 2016).

In his amended complaint, plaintiff claims violations of the FDCPA in relation to communications with defendants regarding his loan modification application. Many courts have found that communications regarding loan modification or loss mitigation are not related to debt collection and therefore do not fall under the protections of the FDCPA. *See, e.g.*, *Farquharson v. Citibank, N.A.*, 664 F. App'x 793, 800–01 (11th Cir. 2016) (finding communications regarding the plaintiffs' ability to opt into a certain loan modification plan were not related to debt collection); *Singha v. BAC Home Loans Servicing, L.P.*, 564 F. App'x 65, 71 (5th Cir. 2014) (finding the communications at issue were in connection with negotiating the modification of a debt and were therefore not communications regarding

the collection of a debt); *Reyes-Aguilar v. Bank of Am., N.A.*, No. 13-cv-05764-JCS, 2014 WL 2917049, at *8 (N.D. Cal. June 24, 2014) (finding the FDCPA does not apply to loan modifications because such activity is more related to loan servicing than debt collection.).

The court agrees that plaintiff's communications regarding the loan modification process are not communications regarding debt collection under the FDCPA. Plaintiff has therefore failed to state a claim under the FDCPA and the court dismisses Count V.

The court will note that in his response to the motion to dismiss, plaintiff objected to the inclusion of various documents defendants attached to their motion. The court did not consider these documents when reaching its decision, but would mention that ordinarily a court may take judicial notice of its own files and records, proceedings in other courts, and facts which are a matter of public record. *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by *McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 11) is granted.

This case is closed. The clerk of the court is directed to enter judgment in favor of defendants and against plaintiff.

Dated February 14, 2019, at Kansas City, Kansas.

> s/ Carlos Murguia
> **CARLOS MURGUIA**
> **United States District Judge**